NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

Eastern District of Kentucky
**FILED**
JUN 2 0 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 06-CV-110-DLB

PATRICK MASON AVERY                                                                              PLAINTIFF

VS:        **MEMORANDUM OPINION AND ORDER**

CORRECTIONS CORPORATION
    OF AMERICA, ET AL.                                                                           DEFENDANTS

Patrick Mason Avery, who is confined in the Little Sandy Correctional Complex ("LSCC") in Sandy Hook, Kentucky, has filed a *pro se* complaint under 42 U.S.C. §1983 [Record No. 1]. He has also filed a "Motion to Proceed *In Forma Pauperis*" [Record No. 2], which the Court will address by separate order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under §1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the

plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The plaintiff alleges that the defendants violated his right to due process of law and his free speech rights. First, he alleges that on March 23, 2006, officials at the Lee Adjustment Center ("LAC") in Beattyville, Kentucky, violated his right to due process by dismissing him from a state prison vocational program in which he was enrolled and close to completing. That due process claim would fall under the Fourteenth Amendment of the United States Constitution.

Second, the plaintiff alleges that when he filed a grievance about his dismissal from the program, LAC officials then retaliated against him by transferring him to the LSCC on April 24, 2006. That claim would fall under the First Amendment of the United States Constitution.

## NAMED DEFENDANTS

The plaintiff names the following defendants: (1) Corrections Corporation of America ("CCA"); (2) the Kentucky Department of Corrections ("KDOC"); (3) Randy Stovall, Warden of the LAC; and (4) Rodney Trowbridge, teacher and supervisor at the LAC.

## RELIEF REQUESTED

The plaintiff seeks monetary damages in excess of two million dollars and punitive damages in the amount of $1.5 million. He also seeks injunctive relief in the form of an order directing the LSCC to allow him to complete the vocational course and receive "good time."

## ALLEGATIONS OF THE PETITION

The plaintiff states that prior to his transfer from the LAC, he had been participating in a culinary arts vocational program. On March 23, 2006, the instructor informed him that he was being dismissed from class on the order of Rodney Trowbridge, whom the plaintiff identifies as "teacher/supervisor" at the LAC. According to the plaintiff, Trowbridge informed him that: (1) he (plaintiff) had not done anything wrong; (2) he would not receive a disciplinary report; (3) he would receive his 60 days of good time credit after 90 days; and (4) he would be able to take the final two exams and complete the course.

One of the documents which the plaintiff attached to his complaint is a two-part document, entitled at the top: "JOB/EDUCATIONAL PROGRAM DISMISSAL." This document refers to him and his case number, 143830. This document was signed by a supervisor on March 24, 2006. The supervisor's name is hard to discern, but it appears to be "Doug Stephens." Under the heading, "Reason for Recommending Dismissal" it states as follows:

> "Disruptive Behavior, could not get along with classmates. Mr. Trowbridge called me and told me to dismiss Mr. Avery."

The plaintiff submitted documentation of his administrative exhaustion efforts regarding his dissatisfaction about being dismissed from the culinary arts vocational program. The Court will summarize the steps which the plaintiff undertook. On March 24, 2006, the plaintiff filed an Inmate Grievance. He asked to be reinstated to the program, stating that he had done nothing to warrant dismissal from the class. In an attachment to that filing, he mentioned that another inmate, William Houston, complained about him (plaintiff) being a child molester/pedophile. The plaintiff speculated that Houston may have been the motivating factor behind his dismissal

3

from the program.

Next, the filings indicate that the plaintiff attempted to take his grievance straight to the warden of the LAC. The warden rejected those premature efforts, advising the plaintiff that he was required to complete the Classification Committee process. On April 4, 2006, the Classification Committee ruled against the plaintiff. The Classification Committee dismissed the plaintiff from the vocational school for 90 days; reassigned him to the kitchen; and told him he could reapply to the culinary arts program on July 4, 2006. On the same day, the plaintiff appealed the Classification Committee's decision. The record contains a letter from the plaintiff to Mr. Kincaid, the LAC Grievance Coordinator, in which the plaintiff requested a hearing before the Grievance Committee. Kincaid responded by scheduling a hearing on April 13, 2006.

The record indicates, however, that on the day that hearing was to transpire, David Frye, the Assistant Warden of the LAC, reinstated the plaintiff to the program under the express condition that the plaintiff refrain from engaging in disruptive behavior and get along with his classmates. The record further indicates that on April 21, 2006, Claude Waldridge, Program Administrator for the KDOC, wrote a letter to the plaintiff in which he stated that he had reviewed the plaintiff's situation and "concur with the decision of the Classification Committee."

It appears that on April 24, 2006, the plaintiff was then transferred to the LSCC. He immediately filed a grievance about the transfer, claiming that it was motivated by retaliation because he (plaintiff) had filed various grievances about his dismissal from the vocational program at the LAC. On May 4, 2006, the plaintiff's claim was denied informally. Again, the name of the LSCC staff member who signed the bottom of the plaintiff's grievance is not legible,

4

but his disposition was as follows:

> "CPP 14-6 States that transfers are classification decisions and are non-grievable."[1]

The record indicates that the "Informal Resolution Stage" is as far as the plaintiff has taken his First Amendment retaliatory transfer claim.

## DISCUSSION
### 1. Fourteenth Amendment Due Process Claims
#### A. Expulsion from Vocational Program

The plaintiff has fully exhausted his claims regarding his demand for money damages and reinstatement into a culinary arts vocational program. Because his claims on this issue fail to implicate a constitutional deprivation, they must be dismissed on the merits.

Due process rights are only triggered by the deprivation of a legally cognizable property interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). Thus, the plaintiff must establish that he has a legally protected interest in being free from a certain security classification in order to claim that he was entitled to due process. For a prisoner, a deprivation of a legally cognizable liberty interest occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995).

Prison officials generally have broad discretion in the internal management of prisons, *Hewitt v. Helms*, 459 U.S. 460 (1983), and classification of prisoners is generally within the

---

[1] The KDOC has promulgated a set of administrative regulations at 501 K. A. R. 6:020. These regulations, referred to as "Corrections Policies and Procedures" ("CPP"), govern prison procedures. According to CPP 14.6, §VI (B)(5), "classification" issues are not grievable.

discretion of prison officials. *Pugliese v. Nelson*, 617 F.2d 916 (2nd Cir. 1980). Beyond that, a prisoner has no constitutional entitlement to a particular classification or to any particular eligibility for rehabilitative programs. *See Moody v. Daggett*, 429 U.S. 78, 88, n.9 (1976). Under the *Sandin* analysis, the loss of a mere privilege (such as participation in a rehabilitative program) would not impose an "atypical and significant hardship in relation to the ordinary incidents of prison life." Even under pre-*Sandin* case law, a change in the conditions of confinement, such as denial of access to rehabilitative programs, would not have invoked due process considerations, even though the denial might have caused an adverse impact on the prisoner. *Hewitt v. Helms*, 459 U.S. at 467; *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2531 (1976). The Court will dismiss this claim with prejudice.

B. Loss of "Good Time" Credit

To the extent that the plaintiff alleges that his expulsion from the culinary arts vocational program adversely impacted his eligibility for "good time credit" toward his state sentence, that due process claim also fails on the merits. The KDOC has promulgated a set of administrative regulations at 501 KAR 6:020. They are referred to as "Corrections Policies and Procedures" ("CPP"). CPP 15.3 governs the process for the award of "Meritorious Good Time," which is defined as "a good time credit that may be awarded for performing duties of outstanding importance in connection with institutional operations and programs."

Under case law, the state of Kentucky has not created a liberty interest in "meritorious good time credit." *See Anderson v. Commonwealth*, Ky.App., 964 S.W.2d 809 (1997), in which the Kentucky Court of Appeals held that an award of meritorious good time is a privilege, not a right. *Id.,* 964 S.W2d at 810. It further stated that an inmate has no right to receive meritorious

good time which would be subject to the Fourteenth Amendment's due process requirements. *Id. See also See Reyes v. Motley*, 2003 WL 21993962, *2 (Ky. App. August 22, 2003), in which the Kentucky Court of Appeals stated:

> No inmate has a right to meritorious good time under CPP 15.3, it is a privilege bestowed at the discretion of the Commissioner. Because the award of meritorious good time under CPP 15.3 is left entirely to the discretion of prison administrators, we hold inmates such as appellant have no protected liberty interest at stake in [its] denial. *Id.* [*Anderson*] at 810. Reyes argues that the circuit court erred in determining that he failed to allege that he performed duties of outstanding importance and directs our attention to a letter, attached to his original petition, which describes his work in the prison's adult literacy program. Regardless of that fact, our decision in *Anderson* held that an inmate has no right to receive meritorious good time which would be subject to the Fourteenth Amendment's due process requirements. Consequently, the trial court correctly declined to review the commissioner's decision to deny Reyes' request for meritorious good time.

*See Reyes v. Motley*, 2003 WL 21993962 at *2.

The plaintiff's claim relating to the alleged denial of "good time credit" under state law will be dismissed with prejudice, for failure to state a claim upon which relief can be granted. 28 U.S.C. §1915(e)(2)(ii).

## 2. First Amendment Retaliation Claim

The plaintiff's second claim is that because he filed grievances regarding his expulsion from the culinary arts program, the LAC defendants retaliated against him by transferring him to the LSCC. The Court will dismiss this claim without prejudice, because the plaintiff has not fully exhausted his claim on this issue according to KDOC regulations.

CPP Number 14.6, entitled *Inmate Grievance Process,* explains the four steps which state inmates are required to pursue in order to file a grievance. According to CPP 14.6, §VI

(I)(1), a prisoner in a state correctional institution must informally attempt to grieve a claim with the Grievance Aide, the Grievance Coordinator, the department head, or institutional staff.

If the attempt at informal resolution fails, he must pursue formal steps by seeking a hearing before the Grievance Committee [*Id.*, §(2)]. The Committee's decision must be forwarded to the warden, who is responsible for making a final written decision [*Id.*, §2(c)-(d)]. A prisoner who is not satisfied with the warden's final decision may appeal that decision to the Commissioner of Corrections by using a specific form described in §3(a) of the *Inmate Grievance Process*.

Here, the plaintiff pursued the first step, the informal grievance procedure, but he has not filed documentation indicating that he has pursued the next three steps. For that reason, the retaliatory transfer claim will be dismissed without prejudice to the exhaustion of the claim.

The plaintiff is forewarned that even after exhaustion, his First Amendment retaliation claim may still be subject to dismissal on the merits for failure to state a constitutional claim. A retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) defendant took an adverse action[2] against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first two

---

[2]

With respect to plaintiff's retaliation claim, he may be hard pressed to establish a valid retaliation claim, because a transfer to another prison facility does not qualify as adverse action. "In *Meachum v. Fano*, 427 U.S.215, 223, 96 S. Ct. 2532, 2538 (1976), the Supreme Court found that the transfer of a prisoner from one institution to another was unprotected by 'the Due Process Clause in and of itself,' even though the change in facilities involved a significant modification in conditions of confinement, later characterized by the Court as a 'grievous loss.'" *Hewitt vs. Helms*, 459 U.S. at 467-68, (citing *Moody v. Daggett*, 429 U.S. 88, n.9). Thus, even though plaintiff was transferred to the LSCC, the transfer would most likely not qualify as "adverse action" for purposes of establishing a First Amendment retaliation claim.

8

elements, that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)  The plaintiff's Fourteenth Amendment due process claims regarding: (a) expulsion from the LAC culinary arts program and (b) the loss of "good time" credits are **DISMISSED WITH PREJUDICE.**

(2)  The plaintiff's First Amendment retaliation claim is **DISMISSED WITHOUT PREJUDICE.**

(3)  Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

This 20th day of June, 2006.



Signed By:
David L. Bunning
United States District Judge